UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

RYAN A. DOTSON,                    )
                                  )
          Plaintiff,              )
                                  )
     v.                           )          Case No. 1:15-cv-41
                                  )
NANCY A. BERRYHILL,               )
Acting Commissioner of Social Security,[1] )
                                  )
          Defendant.              )

**OPINION AND ORDER**

This matter is before the court on the petition for judicial review of the decision of the

Commissioner filed by the plaintiff, Ryan A. Dotson, on February 5, 2015.[2]  For the following

reasons, the decision of the Commissioner is **REMANDED**.

*Background*

The plaintiff, Ryan A. Dotson, filed an application for Disability Insurance Benefits and

Supplemental Security Income on July 5, 2012, alleging a disability onset date of June 30, 2012.

(Tr. 17).  The Disability Determination Bureau denied Dotson's application on September 13,

2012, and again upon reconsideration on November 19, 2012.  (Tr. 17).  Dotson subsequently

filed a timely request for a hearing on November 30, 2012.  (Tr. 17).  A hearing was held on

August 6, 2013, before Administrative Law Judge (ALJ) Maryann S. Bright, and the ALJ issued

[1]      Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W.
Colvin as the defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last
sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]      On January 8, 2016, this case was reassigned to Magistrate Judge Susan L. Collins upon the parties'
consent under 28 U.S.C. § 636(c), and then was reassigned to Magistrate Judge Andrew P. Rodovich.  On August 5,
2016, the court ordered the parties to file any objection to Magistrate Judge Rodovich conducting all further
proceedings in this case.  Because neither party filed an objection, this court finds that the parties voluntarily consent
to Magistrate Judge Rodovich under 28 U.S.C. § 636(c).

an unfavorable decision on September 13, 2013. (Tr. 17–29). Vocational Expert (VE) Dale A. Thomas, Dotson, and Dotson's ex-wife, Melissa Dotson, testified at the hearing. (Tr. 17, 23). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–13).

The ALJ found that Dotson met the insured status requirements of the Social Security Act through December 30, 2016. (Tr. 19). At step one of the five step sequential analysis for determining whether an individual is disabled, the ALJ found that Dotson had not engaged in substantial gainful activity since June 30, 2012, the alleged onset date. (Tr. 19). At step two, the ALJ determined that Dotson had the following severe impairments: bipolar II disorder, panic disorder without agoraphobia with mild panic attacks, posttraumatic stress syndrome (PTSD), and obesity. (Tr. 20). At step three, the ALJ concluded that Dotson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 20). Specifically, she found that he did not meet Listings 12.04 or 12.06. (Tr. 20).

In finding that Dotson did not meet the above listings, the ALJ considered the paragraph B criteria for mental impairments, which required at least two of the following:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(Tr. 21-22). The ALJ defined a marked limitation as more than moderate but less than extreme and repeated and extended episodes of decompensation as three episodes within one year or once every four months with each episode lasting at least two weeks. (Tr. 21). The ALJ found that Dotson had moderate restrictions in daily living activities. (Tr. 21). She noted that Dotson was independent in his personal care but neglected his hygiene at times. (Tr. 21). Dotson testified

that he received reminders from his mother-in-law to shower and that he relied on his ex-wife to clean and grocery shop. (Tr. 21). However, the ALJ reported that Dotson was the primary caretaker of his infant son. (Tr. 21).

The ALJ found that Dotson had moderate difficulties in social functioning. (Tr. 21). When asked if he had ever been fired for problems getting along with others, Dotson testified at the hearing that he was fired for having a sexual relationship with a coworker. (Tr. 21). Dotson's ex-wife testified that Dotson could not maintain a job for more than six months because he did not get along well with others. (Tr. 21). However, the ALJ noted that Dotson left home alone, worked part-time after the alleged onset date caring for adults with mental disabilities, and interacted without issue with clients. (Tr. 21).

The ALJ concluded that Dotson had moderate difficulties in concentration, persistence, or pace. (Tr. 21). Dotson testified to memory problems, but the ALJ indicated his memory issues were moderate because he could handle a checkbook and he remembered pertinent information about his past employment. (Tr. 21). Moreover, the ALJ found that Dotson had not experienced any extended episodes of decompensation. (Tr. 21).

The ALJ concluded that Dotson did not satisfy the paragraph B criteria because his mental impairments did not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation. (Tr. 22). Additionally, she concluded that Dotson did not satisfy the paragraph C criteria because the record was devoid of evidence of episodes of decompensation, potential episodes of decompensation, or an inability to function outside a highly supportive living arrangement or his home. (Tr. 22).

The ALJ then assessed Dotson's residual functional capacity (RFC) as follows:

> the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c)

except he is unable to engage in complex or detailed tasks, but can perform simple, routine, and repetitive tasks consistent with unskilled work; and is able to sustain and attend to task throughout the workday. He is limited to work in a low stress job, defined as having only occasional decision making required and only occasional changes in the work setting. The claimant is further limited from fast-paced work such as assembly line production work with strict productivity requirements. He is limited to superficial interaction with coworkers, supervisors and the public, with superficial interaction defined as occasional and casual contact not involving prolonged conversation or discussion of involved issues. Contact with supervisors still involves necessary instruction.

(Tr. 22). The ALJ explained that in considering Dotson's symptoms she followed a two-step process. (Tr. 22). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Dotson's pain or other symptoms. (Tr. 22). Then she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Dotson's functioning. (Tr. 22–23).

Dotson application for disability benefits alleged that his bipolar disorder, borderline personality disorder, PTSD, and obsessive-compulsive disorder rendered him disabled. (Tr. 23). He reported on his Function Report that his anxiety caused memory and concentration problems, difficulty completing tasks, and getting along with others. (Tr. 23). Specifically, he indicated due to his anxiety at work he would cry in the parking lot and hide to call his wife. (Tr. 23). He reported that his medications caused several side effects. (Tr. 23). Dotson testified that he was the primary caretaker for his sixteen-month-old son with the help of his mother-in-law but that she worked during the day. (Tr. 23). Also, he reported that he attempted suicide after an altercation with his ex-wife but that he did not seek emergency treatment. (Tr. 23). He stated that he relied on his ex-wife to care for the home, mow the lawn, and grocery shop. (Tr. 23).

Dotson's ex-wife testified that they divorced because she could not afford the copays for Dotson's therapy, but that they continued to live as husband and wife. (Tr. 23). She stated that Dotson would continuously call her from work because of his anxiety and occasionally his anxiety caused him to miss work because he would not get out of bed. (Tr. 23). She indicated that he was head-butted at work on August 14, 2011, and that his PTSD worsened after the incident, which led to his termination. (Tr. 23). Additionally, she testified that Dotson cared for their son, but that he required her assistance. (Tr. 23).

The ALJ found that Dotson's impairments could cause some of his alleged symptoms, but that he was not entirely credible regarding the intensity, persistence, and limiting effects of the symptoms. (Tr. 23). Specifically, she gave Dotson's testimony limited weight because there were many inconsistencies between it and the record. (Tr. 23–24). For example, she found that his work history, daily living activities, and the medical evidence was inconsistent with his claim of disabling anxiety. (Tr. 23–24). The ALJ noted that Dotson worked part-time, including skilled work after his alleged onset date, therefore, she found that his anxiety did not significantly interfere with his ability to work. (Tr. 23-24). Also, despite receiving assistance from his ex-wife and mother-in-law, the ALJ noted that Dotson was the primary caretaker for his infant son. (Tr. 24).

The ALJ indicated that Dotson did not report any medication side effects at several medication management visits despite claiming that all his medications caused side effects. (Tr. 24). Additionally, Dotson reported problems with hygiene, yet he appeared well-groomed and reported taking four showers a day. (Tr. 24). The ALJ assigned little weight to Dotson's ex-wife's testimony because it lacked support from the medical records and she had a financial interest in Dotson receiving benefits. (Tr. 24).

The ALJ then reviewed the medical evidence. (Tr. 24–26). She found that the record did not demonstrate a long history of mental health treatment. (Tr. 24). She indicated that Dotson first sought counseling in 2010 when his family experienced a traumatic event and that he began taking depression medication in early 2011. (Tr. 24). On July 15, 2011, Dr. Heidi Ehrhardt diagnosed Dotson with depression and bipolar disorder. (Tr. 24). In August of 2011, Dotson began treatment with Dr. Jay Fawver. (Tr. 24). Dr. Fawver prescribed several medications and Dotson was treated on a monthly basis at the Fawver Wellness Clinic through July 2012. (Tr. 24). Dotson testified that he stopped treatment with Dr. Fawver because he did not recommend disability. (Tr. 24).

In August of 2012, Dotson began treatment with Dr. Samir Ishak who assessed him with anxiety disorder and prescribed several medications. (Tr. 25). At Dotson's follow up appointment, he reported that he stopped using Abilify because it made him feel manic. (Tr. 25). In October 2012, Dotson saw Dr. Ehrhardt again and complained of psychological and memory problems. (Tr. 25). She recommended a neuropsychological evaluation and noted that Dotson had lost consciousness after a patient pushed him down at work. (Tr. 25).

After Dr. Ehrhardt's recommendation, Dotson saw neuropsychologist Christina Stemmler, Psy.D. for complaints of disorientation, short-term memory loss, confusion, and disorganization. (Tr. 25). Dotson denied having attention problems despite his history of ADHD. (Tr. 25). He reported that his daily activities consisted of caring for his seven-month-old son and his horse. (Tr. 25). Dr. Stemmler found some memory and attention problems during her mental status examination and diagnosed Dotson with cognitive disorder, bipolar II disorder, ADHD, anxiety disorder, and a learning disorder. (Tr. 25). She concluded that Dotson could be experiencing residual deficits from a traumatic brain injury and recommended further

testing, more medication management, and psychiatric monitoring from Dr. Ishak. (Tr. 25). Dr. Ishak treated Dotson and noted that he was not experiencing any side effects from his medications. (Tr. 25). Dr. Ishak continued Dotson on his medications. (Tr. 25). Susan Tielker-Sharpe provided coping techniques during a counseling session after Dotson discussed his anger issues, insecurities, belief that he was disabled, grief over his grandfather's passing, and dependency problems. (Tr. 25).

Dr. Stemmler performed a neuropsychological examination and recommended Dotson receive ongoing monitoring from his treating physicians and mental health providers. (Tr. 25). She supported Social Security disability temporarily, but she indicated that Dotson's head injury did not prevent him from returning to gainful employment. (Tr. 25). Dotson reported isolation, neglecting his personal hygiene, worsening depression and anxiety, and failing to take his diagnosed Lithium for two weeks. (Tr. 25). Dr. Ishak requested Dotson be hospitalized due to his worsening depression symptoms and changes in behavior. (Tr. 25). Dr. Ishak assessed him with bipolar affective disorder, posttraumatic stress disorder, and panic attacks without agoraphobia. (Tr. 25-26). Dotson was hospitalized twice and discharged both times at his own request. (Tr. 26).

Dotson underwent an independent psychological evaluation with Revathi Bingi, Ed.D. who assessed him with bipolar disorder, most recent episode depressed, panic disorder with agoraphobia, PTSD, and OCD. (Tr. 26). Dotson reported symptoms of panic attacks, feelings of worthlessness, mind racing, excessive anger, poor focus, mood swings, and suicidal ideation. (Tr. 26). However, the ALJ noted that he correctly interpreted proverbs, identified similarities and differences between objects, recalled digits, and calculated simple math problems. (Tr. 26).

Dr. Ishak opinioned that Dotson was unable to hold employment, however, Dotson was working at the time. (Tr. 26). Therefore, the ALJ assigned little weight to his opinion because he had treated Dotson for only three months and his opinion was inconsistent with Dotson's current work activity. (Tr. 26). The ALJ assigned little weight to Dr. Fawver's opinion that Dotson should remain off work because his mood was unpredictable and unstable. (Tr. 26). The ALJ concluded that Dr. Fawver had seen Dotson for only two months and that his limitations were not long-term. (Tr. 26).

Dr. Bingi found that Dotson did not have significant problems with cognition, but that he appeared to be dependent on his wife and assessed him with a Global Assessment of Functioning (GAF) score of 45. (Tr. 26). The ALJ assigned some weight to Dr. Bingi because he conducted a detailed psychological evaluation, but she discredited his opinion because he had met with Dotson only once and a GAF score was not dispositive or proof of an ongoing disability for Social Security purposes. (Tr. 26-27). The ALJ assigned great weight to the opinions of the State agency psychological consultants who concluded that Dotson retained the ability to carry out unskilled or semi-skilled tasks on a sustained basis in a competitive setting not requiring pace or intense concentration. (Tr. 27).

There are several other GAF scores in the record and each score was given some weight. (Tr. 27). The ALJ determined that the GAF scores showed that except for a brief period in July of 2013 Dotson's treatment providers reported that his social, occupational, and school functioning were moderately impaired. (Tr. 27). The ALJ found the findings to be consistent with Dotson's daily activities, work history, and the opinions of the State agency psychological consultants. (Tr. 27).

At step four, the ALJ found that Dotson was unable to perform any past relevant work. (Tr. 27). Considering Dotson's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy he could perform, including electronics assembler (8,000 jobs locally and 114,000 jobs nationally), laundry worker (4,800 jobs locally and 298,000 jobs nationally), and packer and hand packager (1,600 jobs locally and 56,000 jobs nationally). (Tr. 28).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job

experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**.

First, Dotson has argued that the ALJ failed to consider all of his medically determinable severe impairments. At step two, the claimant has the burden to establish that he has a severe impairment. *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). A severe impairment is an "impairment or combination of impairments which significantly limits [one's] physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 404.1521(a)**; *Castile*, 617 F.3d at 926. Basic work activities include "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." **20 C.F.R. § 404.1521(b);** *Stopka v. Astrue*, 2012 WL 266341, at *1 (N.D. Ill. Jan. 26, 2012). "[A]n impairment that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." **Social Security Ruling 96-3p**, 1996 WL 374181, at *1. Courts have characterized step two as a *de minimis* screening device that disposes of groundless claims. *Johnson v. Sullivan*, 922 F.2d 346, 347 (7th Cir. 1990); *Elkins v. Astrue*, 2009 WL 1124963, at *8 (S.D. Ind. April 24, 2009) (citing *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005)); *see Stopka*, 2012 WL 266341 at *1 (listing cases supporting same).

The ALJ found that Dotson suffered from the severe impairments of bipolar II disorder, panic disorder without agoraphobia with mild panic attacks, posttraumatic stress syndrome (PTSD), and obesity. Dotson has argued that the ALJ failed to mention or discuss his medically determinable impairments of obsessive compulsive disorder (OCD), borderline personality disorder, and cognitive disorder. The ALJ acknowledged that Dotson's application for disability

benefits alleged that his bipolar disorder, borderline personality disorder, PTSD, and obsessive compulsive disorder rendered him disabled. (Tr. 23). The ALJ briefly discussed Dotson's cognitive disorder. The ALJ noted Dr. Stemmler's mental status examination findings and that she assessed Dotson with cognitive disorder, bipolar II disorder, ADHD, anxiety disorder, and a learning disorder. (Tr. 25). Also, the ALJ noted Dotson's obsessive compulsive disorder after review of Dr. Bingi's psychological evaluation that assessed Dotson with bipolar disorder, most recent episode depressed, panic disorder without agoraphobia, PTSD, and OCD. (Tr. 26).

A finding at step two that a medical condition is severe "is merely a threshold requirement." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir.1999). The ALJ's classification of an impairment as severe or non-severe is irrelevant past step two. All that is required of the ALJ is to consider the impact of all the impairments, severe and non-severe, on Dotson's ability to work. *See Raines v. Astrue,* 2007 WL 1455890, at *7 (S.D. Ind. 2007). However, the ALJ cannot ignore a line of evidence that suggests a disability. *See Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) ("[T]he ALJ may not ignore an entire line of evidence that is contrary to the ruling . . . ."). Here, the ALJ found severe impairments at step two. The ALJ proceeded beyond step two, therefore, no error resulted from a failure to label an impairment as severe. *See Raines v. Astrue,* 2007 WL 1455890, at *7 (S.D. Ind. 2007). It is the claimant's burden to establish his ailments and their symptomology. *Castile v. Astrue,* 617 F.3d 923, 926 (7th Cir. 2010).

Dotson did not identify how the ALJ failed to consider his symptoms in combination or how any errors at step two caused an error later in the process. Moreover, he did not meet his burden to prove that the impairments were severe. *Castile,* 617 F.3d at 926. The ALJ found

severe impairments, proceeded through the evaluation process, and considered the aggregate effect of his impairments.

Next, Dotson has argued that the ALJ failed to engage in a legally sufficient step three analysis. Dotson indicated that it was appropriate for the ALJ to consider Listing 12.04 and 12.06. However, he contends that the ALJ's omission of Listing 12.02 for cognitive disorders, Listing 12.04 for affective disorders, and 12.06 for OCD was legal error. Dotson further contends that the ALJ's omission of paragraph C criteria of Listing 12.02 and 12.04 was harmful and reversible error.

For a claimant to show that he met a listed impairment, he must have demonstrated that his impairment met each required criterion and bore the burden of proof in showing his condition qualified. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). A condition that met only some of the required medical criteria, "no matter how severely," cannot qualify as meeting a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

**Section 12.00(A)** of the social security regulations describes the structure of the Mental Disorder Listings. To show that he met the Mental Disorder Listing, the claimant must have submitted a set of medical findings that supported a diagnosis of one of the listed medical impairments. After the claimant has met this burden, the court must assess the severity of the impairment under paragraph B. **20 C.F.R. § 404.1520a(a)**. Paragraph B sets forth the impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The claimant's functional limitations are assessed by using the four criteria set forth in paragraph B of the listings: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. **Listing 12.00(C); 20 C.F.R. § 404.1520a(c)(3).** Each functional limitation must be evaluated to determine the severity, taking

into consideration "all relevant and available clinical signs and laboratory findings, the effects of [the] symptoms, and how [the claimant's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." **20 C.F.R. § 404.1520a(c)(1).** If the degree of limitation is none or mild in the first three categories and none in the fourth, the impairment is not severe. **20 C.F.R. § 404.1520a(d)(1)**. Otherwise, the court will proceed to determine whether the claimant met the criteria set forth by the Listing for the specific mental impairment for which he was diagnosed.

The ALJ did not discuss whether Dotson met the paragraph A criteria, so it is proper for the court to assume that he did meet the criteria. The ALJ found that Dotson had moderate restrictions in daily living activities, social functioning, and with concentration, persistence, or pace. (Tr. 21). Moreover, the ALJ found that Dotson had not experienced any extended episodes of decompensation. (Tr. 21). Because the ALJ did not find two marked limitations or one marked limitation and repeated episodes of decompensation, she concluded that Dotson did not satisfy the paragraph B criteria. (Tr. 22).

Dotson has indicated that paragraph C for Listing 12.06 was not satisfied. Specifically, with respect to Listings 12.02 and 12.04, "[t]he required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in A and C are satisfied." **20 C.F.R. § 404, Subpt. P, App., §§ 12.02, 12.04**. Dotson has argued that he satisfied the paragraph C criteria of Listing 12.02 for cognitive disorders and Listing 12.04 for affective disorders. To meet the C criteria the claimant must show:

> Medically documented history of a [chronic organic mental disorder, for Listing 12.02 and chronic affective disorder, for Listing 12.04] of at least two years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medical or psychosocial support and one of the following:

14

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. A current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

**20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00.**

The ALJ concluded that Dotson did not satisfy the paragraph C criteria because the record was devoid of evidence of episodes of decompensation, potential episodes of decompensation, or an inability to function outside a highly supportive living arrangement or his home. (Tr. 22).

Dotson has argued that the potential for decompensation was evident in the treatment notes and consultative examiners' observations, as well as his and his ex-wife's reports. He indicated that the record supported the existence of a residual disease process that had resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause him to decompensate. Also, he contends that his cognitive disorder and bipolar disorder are medically documented chronic mental disorders of at least two years in duration.

The Commissioner indicated that the State agency doctors whom the ALJ gave great weight did not agree that Dotson met or equaled a listing. Also, the Commissioner has reiterated that Dotson's ability to work past his alleged onset date was not reflective of the inability to do any gainful activity as required for the Listing. However, the ALJ did not reference the doctors' opinions or Dotson's work history when considering the paragraph C criteria. Even if there is evidence in the record to support the ALJ's decision, principles of administrative law require the

ALJ rationally to articulate the ground for her decisions and confine the court's review to reasons supplied by the ALJ. *Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir. 2002).

Dotson has failed to cite specific evidence to support his assertion. However, the ALJ failed to build a logical bridge that was persuasive. An ALJ must articulate, at a minimum, her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *Wiszowaty v. Astrue*, 861 F.Supp.2d 924, 934 (N.D. Ind. 2012). There is no analysis of the evidence relied on to support the finding that Dotson did not satisfy paragraph C criteria. The ALJ may be able to articulate support from the evidence for her decision, but she failed to do so. The ALJ has a duty to develop the record fully before drawing conclusions and must adequately articulate her analysis, so the court can trace her path of reasoning. *Herron v. Commissioner of Social Sec.,* 788 F.Supp.2d 809, 818 (N.D. Ind. 2011). Therefore, this matter is remanded for the errors in the Step 3 analysis that require a more comprehensive discussion of the evidence by the ALJ.

Dotson has argued that the ALJ's credibility finding was patently wrong. This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013); *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds her credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles her opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997); *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. *Steele v. Barnhart*, 290 F.3d 936,

942 (7th Cir. 2002). Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *see* *Bates*, 736 F.3d at 1098.

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." **20 C.F.R. § 404.1529(a);** *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. § 404.1529(c);** *see* *Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005) ("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not disregard an individual's statements about symptoms solely based on

objective medical evidence.  SSR 16-3p, at *5[3]; *see **Moore v. Colvin**, 743 F.3d 1118, 1125 (7th Cir. 2014) ("'[T]he ALJ cannot reject a claimant's testimony about limitations on his daily activities solely by stating that such testimony is unsupported by the medical evidence.'") (quoting **Indoranto**, 374 F.3d at 474); **Carradine v. Barnhart**, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits.").  Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant.  She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties.  Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities.  (internal citations omitted).

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994); *see **Zurawski v. Halter**, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, she must make more than "a single, conclusory statement . . . .  The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly

---

[3]     The Social Security Administration updated its guidance about evaluating a claimant's symptoms.  *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016).  SSR 16-3p superseded SSR 96-7p and removed the term "credibility" from the Administration's policies.  SSR 16-3p at *1.  The new policy clarifies that an ALJ should not examine a claimant's character similar to an adversarial proceeding when evaluating the claimant's subjective symptoms.  SSR 16-3p at *1.  Although SSR 16-3p post-dates the ALJ hearing in this case, a regulation that clarifies rather than changes existing law is appropriate on appeal.  **Pope v. Shalala**, 998 F.2d 473, 482–83 (7th Cir. 1993), *overruled on other grounds by **Johnson v. Apfel**, 189 F.3d 561 (7th Cir. 1999).  Because SSR 16-3p clarifies the Administration's policies, this court will evaluate the ALJ's findings under the Administration's new guidance.  *See **Roper v. Colvin**, 2016 WL 3940035, at *3 (N.D. Ill. July 21, 2016) (finding it appropriate to consider the new regulation on appeal).

articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, at *9; *see Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) ("[A] failure to adequately explain her credibility finding by discussing specific reasons supported by the record is grounds for reversal.") (citations omitted); *Zurawski*, 245 F.3d at 887; *Diaz v. Chater*, 55 F.3d 300, 307–08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, her analysis of the evidence). The ALJ must "build an accurate and logical bridge from the evidence to her conclusion." *Zurawski*, 245 F.3d at 887 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). A minor discrepancy, coupled with the ALJ's observations is sufficient to support a finding that the claimant was incredible. *Bates*, 736 F.3d at 1098. However, this must be weighed against the ALJ's duty to build the record and not to ignore a line of evidence that suggests a disability. *Bates*, 736 F.3d at 1099.

The ALJ found that Dotson's statements concerning the intensity, persistence, and the limiting effects of some of his symptoms were not entirely credible. (Tr. 23). Dotson has argued that the ALJ failed to base her credibility analysis on the totality of evidence in the record, identified natural variations in symptoms as inconsistencies, and made generalizations about his veracity.

First, the ALJ found that Dotson's daily activities were not suggestive of an individual with disabling anxiety. The ALJ noted that Dotson was the primary caretaker for his infant son for several hours a day. (Tr. 24). The Seventh Circuit has cautioned ALJs from equating a claimant's care for a family member with an ability to work. *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014). Also, the ALJ found Dotson incredible based on his testimony that he worked part-time after the alleged onset date as a Bed Checker at Lutheran Life Villages and as a Residence Supervisor at the Mentor Network of Indiana. The VE indicated that his work as a

Residence Supervisor had a Specific Vocational Preparation (SVP) level of 6 and was considered skilled work. (Tr. 23). Dotson was on the job for fourth months, part-time, and earned less than $3000.00.

Dotson has argued that the ALJ should have considered this an unsuccessful work attempt and that it should not have served as a negative credibility factor. Dotson has cited CFR 404.1575 as his authority, which does not apply because it pertains to individuals who are self-employed. The ALJ noted that Dotson did work after the alleged disability onset date, but this work activity did not rise to the level of substantial gainful activity. (Tr. 19). However, the ALJ explained that Dotson's part-time employment was indicative that his anxiety did not significantly interfere with his ability to perform the work. (Tr. 24).

It was proper for the ALJ to consider Dotson's daily activities as a factor when assessing the credibility of his claims. **20 § C.F.R. 404.1529(c).** The ALJ properly included in Dotson's daily activities his ability to perform part-time work after his alleged onset date for several months. *See **Berger v. Astrue,*** 516 F.3d 539, 546 (7th Cir. 2008) ("Although the diminished number of hours per week indicated that [the claimant] was not at his best, the fact that he could perform some work cuts against his claim that he was totally disabled."). The ALJ did not conclude that his part-time work demonstrated that he had the sufficient residual mental ability to work full time, rather his anxiety did not interfere with his ability to perform his work. *See **Eisaman v. Astrue,*** 2012 WL 3028040, at *10 (N.D. Ind. 2012).

The ALJ noted that Dotson made inconsistent statements about his hygiene. He testified that he had problems with hygiene, yet the treatment notes described him as well-groomed. Moreover, the records indicated that Dotson reported that he took four showers a day to help with his anxiety. Also, Dotson testified that he had side effects from all the medications, but his

medication management visits showed no side effects reported. (Tr. 24). Dotson has argued that a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about his overall condition. ***Punzio v. Astrue,*** 630 F.3d 704, 710 (7th Cir. 2011).

Dotson contends that the ALJ misunderstood his mental health history. The ALJ indicated that the medical evidence of record did not reflect a long history of mental health treatment. (Tr. 24). Dotson indicated that his mental health treatment started during his childhood and that he reported his history to his numerous providers. The ALJ did omit evidence of mental health issues dating back to the 1990's. The Commissioner has argued that the ALJ referred to Dotson's treatment as an adult, before the alleged onset date. The ALJ cited evidence of counseling in 2010, medication for depression in early 2011, and his diagnosis of depression, likely mild bipolar, in 2011. (Tr. 24). The ALJ also noted that Dotson began treatment with Dr. Fawver in August 2011 and went to the Fawver Wellness Clinic on a monthly basis for medication management. (Tr. 24). The ALJ continued to discuss treatment history with Drs. Ishak and Stemmler. Finally, the ALJ reported that Dotson's continued counseling with Susan Tielker-Sharpe from April 19, 2012 through May 22, 2013. The ALJ minimally articulated her findings regarding Dotson's mental health treatment.

Dotson has argued that the ALJ treated the switch from Dr. Fawver to another doctor as an improper inconsistency. Dotson testified that he stopped seeing Dr. Fawver when he decided to seek disability because he did not recommend disability. Dotson indicated that the ALJ failed to inquire into if Dr. Fawver did not recommend disability in general or with respect to Dotson. However, the Commissioner noted that the ALJ did not cite Dotson's leaving Dr. Fawver as a basis for impugning his credibility.

Although the ALJ could have further explained her credibility finding it was not patently wrong. The ALJ provided sufficient support to build a logical bridge from the evidence to her credibility determination that Dotson could perform a range of activities, therefore he could do more than he claimed. *Pepper v. Colvin,* 712 F.3d 351, 369 (7th Cir. 2013). However, because this matter is being remanded on a separate issue, the ALJ may further explain her credibility determination on remand. Specifically, she may address the issues Dotson has presented with her credibility finding.

Dotson made brief arguments regarding the ALJ assigning little weight to Dotson's ex-wife's testimony and the assessment of his GAF scores. Dotson contends that the ALJ overlooked his ex-wife's testimony. Also, he has argued that the ALJ improperly dismissed the lower GAF scores without any legally sufficient reasoning. However, the court finds that Dotson has waived this argument for lack of development. Claimant's mere mention of facts pertinent to a claim of impairment does not qualify as having raised an issue. *See DeSilva v. DiLeonardi,* 181 F.3d 865, 867 (7th Cir.1999) ("A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record."); *Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Exp., Inc.,* 181 F.3d 799, 808 (7th Cir.1999) (arguments not developed in any meaningful way are waived); *Bollas v. Astrue,* 694 F.Supp.2d 978, 990 (N.D. Ill. 2010).

Dotson has argued that the ALJ gave little weight to the treating and consulting physician's opinions, while crediting the opinions from non-examining physicians. A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in

the record. **20 C.F.R. § 404.1527(d)(2)**; *see Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must "minimally articulate her reasons for crediting or rejecting evidence of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)); *see* **20 C.F.R. § 404.1527(d)(2)** ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

"'[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight' and becomes just one more piece of evidence for the ALJ to consider." *Bates*, 736 F.3d at 1100. Controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. *Schmidt*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as she minimally articulates her reasons for crediting or rejecting evidence of disability."); *see, e.g.*, *Latkowski v. Barnhart*, 93 F. App'x 963, 970–71 (7th Cir. 2004); *Jacoby v. Barnhart*, 93 F. App'x 939, 942 (7th Cir. 2004). If the ALJ was unable to discern the basis for the treating physician's determination, the ALJ must solicit additional information. *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009)). Ultimately, the weight accorded a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician may also "bend over backwards to assist a patient in obtaining benefits . . . [and] is often not a specialist in the

patient's ailments, as the other physicians who give evidence in a disability case usually are."

*Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) (internal citations omitted); *see Punzio*, 630 F.3d at 713.

Such evidence may contain medical opinions, which "are statements from physicians and psychologists ... that reflect judgments about the nature and severity of a claimant's impairment(s), including symptoms, diagnosis and prognosis," physical and mental restrictions, and what the claimant can still do despite his or her impairments. **20 C.F.R. § 404.1527(a)(2).** Medical opinions are to be weighed by the process set forth in **20 C.F.R. § 404.1527(c).**

Dotson began treatment with Dr. Fawver on August 11, 2011, and was treated on a monthly basis at the Fawver Wellness Clinic for medication management. (Tr. 24). On October 4, 2011 and October 10, 2011, Dr. Fawver opinioned that Dotson should remain off work because his mood was not predictable or stable and indicated that he would reevaluate Dotson at the next appointment. The ALJ assigned little weight to Dr. Fawver's opinion because at the time he had treated Dotson for only two months and the limitations given to Dotson were not long term. (Tr. 26). The record indicated that Dr. Fawver and/or nurse practitioners from the Fawver Wellness Clinic continued to treat Dotson from August 2011 to July of 2012 on a monthly basis. At subsequent visits, Dotson reported that he had reduced his work by half because all he wanted to do was lay around. Dotson described his symptoms as worsening despite medication and engaging in psychotherapy. (Tr. 333).

Dotson began seeing Dr. Ishak who assessed him with anxiety disorder on August 29, 2012. The ALJ assigned little weight to Dr. Ishak's opinion that Dotson was unable to hold employment because he had treated him for only three months. (Tr. 26). Also, the ALJ indicated that Dr. Ishak's opinion was contradictory with Dotson's work history because he was

currently working part-time. (Tr. 26). In July of 2012, Dotson reported that he was working on a part-time basis, but by December of 2012 he no longer was employed. The ability to work a few hours each week is significantly different from having the ability to work full-time. *Larson v. Astrue,* 615 F.3d 744, 752 (7th Cir. 2010). Dr. Ishak saw Dotson again on April 22, 2013 and recommended hospitalization due to worsening depression symptoms and marked changes in his behavior. (Tr. 25). The record indicated that Dr. Ishak treated Dotson from August 2012 until at least July of 2013.

The ALJ assigned little weight to the opinions of Drs. Fawver and Ishak because of the length of treatment. Also, Dr. Ishak's opinion was inconsistent with Dotson's work history. A treating source opinion is entitled to controlling weight if it is (a) well supported by medically acceptable clinical and laboratory diagnostic techniques and (b) not inconsistent with other substantial evidence in the record. **20 C.F.R. § 404.1527(c)(2).** The opinions need not be supported by all the evidence, there only needs to be no substantial contradictory evidence. **POMS DI 24515.004.B.1.** An ALJ "must offer 'good reasons' " for discounting a treating physician's opinion. **20 C.F.R. § 404.1527(d)(2)); *Campbell v. Astrue,*** 627 F.3d 299, 306 (7th Cir. 2010). The ALJ has failed to offer good reasons.

However, even if the ALJ properly refused to assign controlling weight, she still was required to determine what weight to assign to their opinions. "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir.2009) (**citing 20 C.F.R. § 404.1527(d)(2)).** These factors are to be applied after the ALJ has determined that a treating

source will not be given controlling weight.  *See* **20 C.F.R. § 404.1527(c)(2).**  The Commissioner has argued that the ALJ was not required to detail every reason for discounting a treating physicians report.  However, the ALJ's decision failed to make clear that she was aware of and considered the other factors.

Dotson saw Dr. Stemmler who assessed him with cognitive disorder not otherwise specified, bipolar II disorder, ADHD, anxiety disorder, and learning disorder.  She supported Social Security disability temporarily so Dotson could focus on his mental health care, but she indicated the nature of his head injury did not prevent him from being able to return to work.  (Tr. 25).  The ALJ did not assign any weight to her opinion, but did note it.  The ALJ must determine what, if any, weight the treating physician's opinion is to be given.  ***Moss v. Astrue,*** 555 F.3d 556, 561 (7th Cir.2009).  If the treating physician is not given controlling weight, the ALJ cannot simply disregard the opinion without further consideration and analysis.  ***Campbell v. Astrue,*** 627 F.3d 299, 308 (7th Cir. 2010) ("Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, she has to decide what weight to give that opinion.").

The ALJ assigned some weight to Dr. Bingi because he performed a detailed psychological evaluation.  (Tr. 26).  He diagnosed Dotson with bipolar disorder, most recent episode depressed, panic disorder without agoraphobia, PTSD, and OCD.  Dr. Bingi had met with Dotson only once.  He assessed Dotson with a Global Assessment of Function (GAF) score of 45.  A GAF rating of 41-50 reflects "serious" impairment in social, occupational, or school functioning.  However, the ALJ noted that the GAF score was not dispositive for Social Security disability purposes.  The Commissioner indicated that Dr. Bingi's opinion underlined that of the State agency reviewing doctors that found Dotson could carry out unskilled or semi-skilled tasks

on a sustained basis in a competitive setting not requiring rapid pace or intense concentration. (Tr. 27). However, the circuit court has made clear that what matters are the reasons articulated by the ALJ. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010).

The ALJ's weighing of medical evidence is conclusive if it was minimally articulated and supported by substantial evidence in the record. *See Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *See Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir.2007) (substantial evidence "must be more than a scintilla but may be less than a preponderance."). A contradictory opinion of a non-examining source, like State agency psychological consultants does not by itself suffice. *See generally Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003). The ALJ assigned little weight to the treating source opinions of Drs. Fawver and Ishak based upon their short-term treating relationship with Dotson, yet credited the State agency psychological consultant with great weight who never established a treating relationship with Dotson. The ALJ failed to offer a "good reasons" for discounting the medical sources' opinion. *See Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (quoting **20 C.F.R. § 404.1527(d)(2)).** On remand the ALJ should revisit the weight given to the medical opinions.

Finally, Dotson has argued that the vocational findings are based on legal error and not supported by substantial evidence. SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform

> sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what she must articulate in her written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but she must provide a 'logical bridge' between the evidence and her conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, she cannot ignore evidence that undermines her ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected.") (citations omitted). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

Dotson has argued that the ALJ failed to consider his ability to sustain the activities cited in the RFC finding throughout an eight-hour day, five days a week. Dotson contends that the evidence shows he was unable to sustain a 9-20 hour per week part-time schedule and the added stress of a 40-hour week would not to be sustainable, as agreed by his doctors. The Commissioner has indicated that the ALJ apprised the VE of Dotson's residual function capacity and both considered his ability to sustain the activities cited in the RFC. In hypothetical questioning to the VE, the ALJ did include work-related limitations to account for Dotson's impairments to the extent that they were supported by medical evidence. Because this matter is being remanded on separated issues, the ALJ should also reconsider her step five finding.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 22nd day of March, 2017.

/s/ Andrew P. Rodovich
United States Magistrate Judge